JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
JOSEPH N. MOTT, ESQ.
Nevada Bar No. 12455
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  (702) 629-7900
Facsimile:   (702) 629-7925
E-mail:      jag@mgalaw.com
             jnm@mgalaw.com
             djb@mgalaw.com

*Attorneys for Plaintiffs Deon Merced and Sertha Evans*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEON MERCED, an individual; SERTHA EVANS, an individual; and each of them on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEVADA PROPERTY 1, LLC d/b/a THE COSMOPOLITAN LAS VEGAS; DOES I through V, inclusive; and ROE CORPORATIONS I through V, inclusive,<br><br>Defendants. | Case No.:<br>Dept. No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs DEON MERCED and SERTHA EVANS, individually and on behalf of all others similarly situated, through their counsel of record MAIER GUTIERREZ & ASSOCIATES, hereby Complains against Defendant NEVADA PROPERTY 1, LLC d/b/a THE COSMOPOLITAN LAS VEGAS, as follows:

### PARTIES, JURISDICTION, AND VENUE

1. All plaintiffs are current or former employees of defendant NEVADA PROPERTY 1, LLC d/b/a THE COSMOPOLITAN LAS VEGAS (hereinafter referred to as "Defendant" or "Cosmopolitan").

1

2. Plaintiff DEON MERCED (hereinafter referred to as "Merced") is and at all relevant times was a resident of and employed in Clark County, Nevada.

3. Plaintiff SERTHA EVANS (hereinafter referred to as "Evans") is and at all relevant times was a resident of and employed in Clark County, Nevada.

4. Defendant Cosmopolitan was and is a Nevada limited-liabilty company licensed and doing buisness in Nevada.

5. The Cosmopolitan was, at all relevant times, Merced and Evans' employer, as that phrase is defined in the Fair Labor Standards Act ("FLSA").

6. The Cosmopolitan is an "enterprise" as defined in the FLSA at 29 U.S.C. § 203(r)(1). Further, the Cosmopolitan is an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA at 29 U.S.C. § 203(s)(1)(A). Cosmopolitan has an annual gross volume of sales made or business done in excess of $500,000.00.

7. The true names of Defendants DOES I through V and ROE CORPORATIONS I through V, their citizenship and capacities, whether individual, corporate, associate, partnership, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiffs is informed and believes, and therefore alleges, that these Defendants were individuals who were in some manner negligent towards Plaintiffs, acted wrongfully and illegally towards Plaintiffs, caused injury to Plaintiffs, and otherwise damaged Plaintiffs. Plaintiffs is further informed and believes, and therefore alleges, that each of these Defendants are or may be legally responsible for the events referred to in this action and other events not mentioned in this action, and caused damages to Plaintiffs including, but not limited to, causing Plaintiffs to not be paid their lawful wages and tips. Plaintiffs will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants when the same have been ascertained, and to join them in this action together with the proper charges and allegations.

8. Merced and Evans have satisfied all administrative and jurisdictional conditions precedent to filing this Complaint.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343(3) as the controversy arises under the laws of the United States. Specifically, the claims

2

1  arise under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et. seq.

2  10. Venue is proper in the District of Nevada because Defendant conducts business and maintains offices in Clark County, Nevada, and the alleged unlawful employment practices were committed in Clark County, Nevada.

## FACTUAL ALLEGATIONS

11. Deon Merced's employment with Cosmopolitan commenced on or about November 2010. Merced remained an employee of Cosmopolitan until her termination in February 2020.

12. Merced was employed as a Slot Guest Service Representative ("GSR").

13. In that position, Merced earned $18.50 per hour plus tips.

14. Sertha Evans' employment with Cosmopolitan commenced on or about November 29, 2010. Merced remained an employee of Cosmopolitan until her termination in September 2019.

15. Evans was employed as a GSR.

16. In that position, Evans earned $18.76 per hour plus tips.

17. Merced and Evans' tips were subject to defendant Cosmopolitan's tip pooling policy.

18. Cosmopolitan's tip pooling policies, practices, and procedures provide that slot department personnel, including Slot Guest Service Representatives, are to carry tips or gratuities "in hand" to the designated tip box in the employee's area and deposit the tip in the tip box. No forms, slips, or other paperwork is completed by the employee upon depositing a tip in a tip box. Tips are then distributed to each tip pooling member's locker.

19. Defendant Cosmopolitan did not keep record of the amount of tips deposited by each individual employee in the tip boxes, or whether specific employees deposited any tips at all in the tip boxes.

20. Upon information and belief, defendant Cosmopolitan's lack of record keeping related to tip contributions by employees is a result of defendant lacking any policies, practices, and procedures for monitoring and tracking such information.

21. From the time Merced and Evans started working at Cosmopolitan through approximately March of 2018, the tip pool for the slot department included Slot Supervisors.

///

22. In March 2018, the Fair Labor Standards Act was amended to explicitly prohibit tip sharing with managers and supervisors.

23. Specifically, 29 U.S.C. § 203(m)(2)(B) was amended to read, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

24. Upon information and belief, on or about March of 2018, defendant Cosmopolitan changed the title of "Slot Supervisor" to "Assistant Manager."

25. Upon information and belief, this change in title was in response to the March 2018 FLSA amendment.

26. Upon information and belief, although the title was changed from "Slot Supervisor" to "Assistant Manager," the roles and responsibilities related to the position remained substantively unchanged.

27. These Slot Supervisors or Assistant Managers were "managers" and "supervisors," as those terms are used and defined in the Fair Labor Standards Act, and specifically, within 29 USC § 203(m)(2)(B).

28. Specifically, upon information and belief, these Cosmopolitan Assistant Managers: (1) customarily and regularly directed the work of at least two or more other full-time employees or their equivalent; (2) had primary duties that involved the management of defendant Cosmopolitan's slot department; (3) had authority to hire or fire other employees, and/or their suggestions and recommendations regarding the hiring, firing, advancement, promotion, or other changes in status of employment were given particular weight by Cosmopolitan; (4) scheduled what shifts employees worked; (5) granted or denied paid time off requests for employees; and, (6) awarded discretionary perks and bonuses to employees.

29. Upon information and belief, from March 2018 to the present, at any given time, approximately 43 individual Slot Department employees participated in the Slot Department tip pool.

30. Upon information and belief, approximately 33 of the 43 employees in the tip pool were GSRs who were properly included in the tip pool pursuant to the 2018 Amendment to 29 U.S.C.

§ 203(m)(2)(B) of the FLSA.[1]

31. Upon information and belief, approximately ten of the 43 employees participating in the tip pool were Managers and Supervisors who should not have been included in the tip pool pursuant to the 2018 Amendment to 29 U.S.C. § 203(m)(2)(B) of the FLSA.

32. Upon information and belief, defendant Cosmopolitan included Assistant Managers in the tip pool as a cost saving measure knowing that by including the Assistant Managers in the tip pool it could pay them a lower base rate of pay than if they were not included in the tip pool.

33. Defendant Cosmopolitan's inclusion of Assistant Managers in the tip pool is tantamount to defendant Cosmopolitan keeping tips received by its employees because it is keeping tips received by GSR employees and using those tips to compensate Assistant Managers.

34. This is the exact kind of conduct 29 U.S.C. § 203(m)(2)(B) of the FLSA is intended to protect against.

35. 29 U.S.C. § 216(b) provides, in pertinent part, "Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."

36. Merced, Evans, and all others similarly situated, are entitled to receive those tips which were improperly withheld by Cosmopolitan and distributed to Managers and Supervisors following the March 2018 amendment to the FLSA, along with liquidated damages and attorneys' fees.

37. Merced and Evans estimate that the biweekly average of each tip pool participant's share totaled approximately $1,500.00.[2]

---

[1] Although Plaintiffs believe that there are approximately 33 GSR positions within the slot department that properly participate in the tip pool at any given time, as a result of employee turnover, for the given period of time, there are far more than 33 total employees, and potential class members, who had tips improperly withheld.

[2] When determining employee shares of tips, Defendant Cosmopolitan calculates an hourly tip rate and multiplies that rate by each employee's hours worked in the pay period to get the employees total tip share. Plaintiff's estimated average tip pool share is based on an 80 hour pay period. Plaintiffs' estimate of the average tip share is based on their first-hand experience and upon various tip share stubs Plaintiffs still had in their possession.

5

38. Specifically, Merced and Evans estimate the following biweekly tip pool totals[3]:

   a. 10/12/2018 - $3,295.20
   b. 11/23/2018 - $1,327.20
   c. 1/4/2019 - $2,280.80
   d. 1/18/2019 - $923.20
   e. 2/1/2019 - $1,659.20
   f. 3/1/2019 - $1,348.00
   g. 3/29/2019 - $1,319.20
   h. 5/24/2019 - $1,349.60
   i. 7/21/2019 - $1,528.80

39. That estimated $1,500.00 average biweekly tip share amount gets multiplied by the ten Managers and Supervisors who were improperly included in the Slot Department tip pool to come up with the average amount of improperly withheld tips per biweekly pay period of $15,000.00.

40. From the time of the March 2018 FLSA amendment to the present, there have been approximately 54 biweekly pay periods resulting in improperly withheld tips totaling approximately $810,000.00.

41. Finally, when $810,000.00 is divided among the 33 slot personnel employees who were properly part of the tip pool, we see that each of the 33 GSR positions was shorted tips of approximately $24,545.45, exclusive of liquidated damages and other damages available to plaintiffs within the FLSA. The amount owed to individual GSRs may vary based on the dates of employment and hours worked during the improper withholding period of March 2018 to present.

42. All employers, including Defendant, are subject to the record keeping requirements imposed by 29 C.F.R. § 516.2 and 29 U.S.C. §§ 211 and 215-216.

43. Cosmopolitan possesses evidence reflecting the precise dates of employment and hours

---

[3] Because of the seasonal nature of the gaming and tourism industry, employees' tip shares could vary significantly depending on the time of the year, holidays, conventions, events, and other factors. Although tip shares were, at times, as high as $8,000.00 for a two week pay period, Plaintiffs believe the nine specific biweekly estimates listed here provide an adequate sample.

1 worked as well as records demonstrating the precise amount of individuals' tip shares.

2     44. To the extent these records are unavailable, or if defendant Cosmopolitan failed to
3 maintain these records in violation of 29 C.F.R. § 516.2 and 29 U.S.C. §§ 211 and 215-216, Merced,
4 Evans, and all others similarly situated, may prove the hours they worked solely by their testimony.
5 The burden then shifts to Defendant to disprove Merced, Evans, and all others similarly situated,
6 testimony.

## COLLECTIVE ACTION ALLEGATIONS

8     45. Plaintiffs bring this action on behalf of others similarly situated as a collective action
9 pursuant to 29 U.S.C. § 216(b).

10     46. The statute of limitations under the FLSA is three years for willful violations.

11     47. The Class is defined as follows: All persons who were employed by Defendant as Slot
12 Guest Services Representatives or Slot Department personnel, other than managers and supervisors,
13 who received tip shares from Defendant from March 2018 through the present.

14     48. Plaintiffs will fairly and adequately represent and protect the interests of the class and
15 has retained counsel with experience litigating such claims.

16     49. A collective action suit, such as this, is superior to other available means for fair and
17 efficient adjudication of this lawsuit. The damages suffered by individual members of the class may
18 be relatively small when compared to the expense and burden of litigation, making it virtually
19 impossible for members of the class to individually redress the wrongs done to them.

20     50. Furthermore, even if members of the class could afford individual litigation against
21 Cosmopolitan, it could and would be unduly burdensome to the judicial system. The collective action
22 is, therefore, the most efficient method by which to resolve these claims.

23     51. With regard to the conditional certification mechanism under the FLSA, Plaintiffs are
24 similarly situated to those they seek to represent for the following reasons, among others:

25     a. Defendant Cosmopolitan employed Plaintiffs as Slot Guest Service
26 Representatives. Plaintiffs, and those similarly situated, were subject to
27 defendant Cosmopolitan's Slot Department tip pool policies, practices, and
28 procedures. In March of 2018, the FLSA was amended to explicitly prohibit

|   |   |   |
|---|---|---|
| 1 |   | managers and supervisors from receiving any portion of an employee's tips. |
| 2 |   | Nevertheless, from March 2018 through the present, defendant Cosmopolitan |
| 3 |   | improperly withheld portions of plaintiffs', and those similarly situated, tips |
| 4 |   | and distributed them to managers and supervisors in violation of the FLSA, 29 |
| 5 |   | U.S.C. § 203(m)(2)(B). Plaintiffs, and those similarly situated, suffered |
| 6 |   | damages as a result of defendant Cosmopolitan's illegal tip pool policy. |
| 7 | b. | Plaintiffs' situation is similar to those they seek to represent because defendant |
| 8 |   | Cosmopolitan improperly withheld portions of plaintiffs', and those similarly |
| 9 |   | situated, tips and distributed them to managers and supervisors pursuant to a |
| 10 |   | uniform policy, plan, and practice. |
| 11 | c. | Common questions of fact and law include, but are not limited, to the |
| 12 |   | following: (1) Whether defendant Cosmopolitan employed plaintiffs, and those |
| 13 |   | similarly situated, within the meaning of the applicable provisions of the FLSA; |
| 14 |   | (2) Whether plaintiffs, and those similarly situated, were subjected, or forced |
| 15 |   | to comply with, a uniform policy, plan, and practice whereby defendant |
| 16 |   | Cosmopolitan withheld portions of plaintiffs, and those similarly situated, tips |
| 17 |   | and distributed them to managers and supervisors in violation of the FLSA, 29 |
| 18 |   | U.S.C. § 203(m)(2)(B); (3) Whether defendant Cosmopolitan knowingly failed |
| 19 |   | to maintain and preserve accurate and true records of all hours worked and |
| 20 |   | wages earned by plaintiffs, and those similarly situated; (4) Whether plaintiffs, |
| 21 |   | and those similarly situated, sustained damages and, if so, what is the proper |
| 22 |   | measure of them. |
| 23 | d. | Upon information and belief, defendant Cosmopolitan employs, and employed, |
| 24 |   | approximately 33 qualifying Slot Guest Service Representatives, at any given |
| 25 |   | time within the applicable statute of limitations. |
| 26 | e. | Defendant Cosmopolitan knew or should have known its policies, practices, |
| 27 |   | and procedures alleged herein were unlawful and that it owed employees this |
| 28 |   | money, and have willfully failed to pay its employees properly. Defendant |

Cosmopolitan is a sophisticated corporate entity with in-house attorneys and retained counsel whose job it is to keep the company in compliance with the law. Upon information and belief, Defendant Cosmopolitan was on notice of the 2018 Amendment to the FLSA. Moreover, upon information and belief, defendant Cosmopolitan changed the title of "Slot Supervisors" to "Assistant Managers" in response to the 2018 Amendment to the FLSA. Nevertheless, defendant Cosmopolitan continued to violate the law and refused to pay plaintiffs, and those similarly situated, for the improperly withheld tips. Defendant Cosmopolitan's failure to pay plaintiffs, and those similarly situated, for such improper tip withholdings prior to the initiation of this action represents willful conduct on the part of defendant Cosmopolitan. Defendant Cosmopolitan's actions and omissions giving rise to this complaint were thus not in good faith and were not based upon an informed, reasonable belief that defendant Cosmopolitan's behavior was lawful.

52. Notice of the pendency and any resolution of these actions can be provided to collective action members by email, mail, print, or internet publications.

## FIRST CLAIM FOR RELIEF

**Violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. – Improperly Withheld Tips**

**(Individually and On Behalf of All Others Similarly Situated)**

53. Plaintiffs incorporate by reference the balance of the complaint as though set forth fully in this claim for relief.

54. In March 2018, the FLSA at 29 U.S.C. § 203(m)(2)(B) was amended as follows, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

55. 29 U.S.C. § 216(b) provides, in pertinent part, "Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the

9

sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."

56. This claim arises from defendant Cosmopolitan's violation of the FLSA, 29 U.S.C. § 201, et. seq., for its improper withholding of plaintiffs, and those similarly situated, tips, and distribution of the same to managers and supervisors.

57. At all material times hereto, plaintiffs, and those similarly situated, were employed by defendant Cosmopolitan as "employees," as defined in the FLSA at 29 U.S.C. § 203(e)(1).

58. Merced and Evans were employed as a Slot Guest Service Representatives.

59. In that position, Merced earned $18.50 per hour plus tips and Evans earned $18.76 per hour.

60. Merced and Evans' tips were subject to defendant Cosmopolitan's tip pooling policy.

61. Defendant Cosmopolitan's tip pooling policies, practices, and procedures provide that slot department personnel, including Slot Guest Service Representatives, are to carry tips or gratuities "in hand" to the designated tip box in the employee's area and deposit the tip in the tip box. No forms, slips, or other paperwork is completed by the employee upon depositing a tip in a tip box. Tips are then distributed to each tip pooling member's locker.

62. Defendant Cosmopolitan did not keep record of the amount of tips deposited by each individual employee in the tip boxes, or whether specific employees deposited any tips at all in the tip boxes.

63. Upon information and belief, defendant Cosmopolitan's lack of record keeping related to tip contributions by employees is a result of defendant lacking any policies, practices, and procedures for monitoring and tracking such information. From the time Merced and Evans started working at Cosmopolitan through the present, the tip pool for the slot department included Slot Guest Services Representatives and Slot Supervisors – later called Assistant Managers.

64. In March 2018, the Fair Labor Standards Act was amended to explicitly prohibit tip sharing with managers and supervisors.

65. Specifically, 29 U.S.C. § 203(m)(2)(B) was amended to read, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to

1  keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

2  66. Nevertheless, defendant Cosmopolitan continued to permit Slot Supervisors, or
3  Assistant Managers, to participate in the tip pool.

4  67. These Slot Supervisors, or Assistant Managers, were "managers" and "supervisors,"
5  as those terms are used and defined in the Fair Labor Standards Act.

6  68. Specifically, they: (1) customarily and regularly directed the work of at least two or
7  more other full-time employees or their equivalent; (2) had primary duties that involved the
8  management of defendant Cosmopolitan's slot department; (3) had authority to hire or fire other
9  employees, and/or their suggestions and recommendations regarding the hiring, firing, advancement,
10 promotion, or other changes in status of employment were given particular weight by Cosmopolitan;
11 (4) scheduled what shifts employees worked; (5) granted or denied paid time off requests for
12 employees; and, (6) awarded discretionary perks and bonuses to employees.

13 69. Upon information and belief, from March 2018 to the present, at any given time,
14 approximately 43 individual Slot Department employees participated in the Slot Department tip pool.

15 70. Approximately 33 of the 43 employees were GSRs who were properly included in the
16 tip pool within the 2018 Amendment to section 29 U.S.C. § 203(m)(2)(B) of the FLSA.

17 71. Approximately ten of the 43 employees were Managers and Supervisors who should
18 not have been included in the tip pool pursuant to the 2018 Amendment to section 29 U.S.C. §
19 203(m)(2)(B) of the FLSA.

20 72. 29 U.S.C. § 216(b) provides, in pertinent part, "Any employer who violates section
21 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the
22 sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in
23 an additional equal amount as liquidated damages."

24 73. 29 U.S.C. § 216(b) provides, in pertinent part, "Any employer who violates section
25 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the
26 sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in
27 an additional equal amount as liquidated damages."

28 ///

74. Merced, Evans and all others similarly situated, are entitled to receive those tips which were improperly withheld by defendant Cosmopolitan and distributed to Managers and Supervisors following the March 2018 amendment to the FLSA, along with liquidated damages and attorneys' fees.

75. Merced and Evans estimate that they, and all others similarly situated, are owed approximately $24,545.45 each, exclusive of liquidated damages and other damages available to plaintiffs within the FLSA. The amount owed to individual GSRs may vary based on the dates of employment and hours worked during the improper withholding period of March 2018 to present.

76. Defendant Cosmopolitan's unlawful conduct has been widespread, repeated, willful, and done as part of common policies, practices, and procedures. Defendant Cosmopolitan knew or should have known its policies alleged herein were unlawful and that it owed employees this money, and have willfully failed to pay its employees properly. Defendant Cosmopolitan's actions and omissions giving rise to this complaint were thus not in good faith and were not based upon an informed, reasonable belief that defendant Cosmopolitan's behavior was lawful.

77. Plaintiffs demand for themselves, and for all others similarly situated, that defendant Cosmopolitan pay Plaintiffs, and all others similarly situated, an amount equal to the amount of tips unlawfully withheld during the relevant time period alleged herein, together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief as follows:

1. For an order conditionally certifying this action under the FLSA and providing notice to all potential members of the Class so they may participate in this lawsuit;

2. For an order appointing Plaintiffs as Representatives of the Class and their counsel as Class Counsel;

3. All wages, tips, and amounts due Plaintiff within the FLSA, including those sums alleged to have been improperly withheld or not paid, tips which were withheld from Plaintiff and distributed to managers and supervisors in violation of 29 U.S.C. § 203(m)(2)(B);

1  4. Liquidated damages pursuant to 29 U.S.C. § 216(b);
2  5. Reasonable attorneys' fees and costs incurred in filing this action;
3  6. Pre-judgment and post-judgment interest, as provided by law, and
4  7. Such other relief the Court deems just.

## JURY DEMAND

Pursuant to the Seventh Amendment to the Constitution of the United States, as well as Article 1, Section 3 of the Constitution of the State of Nevada, Plaintiffs hereby demand a jury trial for each of their claims for relief.

DATED this 21st day of May 2020.

**MAIER GUTIERREZ & ASSOCIATES**

*/s/ Joseph N. Mott*
_____
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
JOSEPH N. MOTT, ESQ.
Nevada Bar No. 12455
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiffs Deon Merced and Sertha Evans*